**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

| | |
|---|---|
| **CONNECTICUT GENERAL LIFE INSURANCE CO.,** | Hon. John M. Vazquez, U.S.D.J. |
| Plaintiff, | Civil Action No. 12-5941 (JMV) |
| -vs- | *(CLOSED)* |
| **ROSELAND AMBULATORY SURGERY CENTER LLC,** | |
| Defendant. | |
| **RICHARD LIPSKY, ROSELAND AMBULATORY SURGERY CENTER LLC, and MHA, LLC d/b/a Meadowlands Hospital,** | |
| Plaintiffs, | Hon. John M. Vazquez, U.S.D.J. |
| -vs- | Civil Action No. 13-105 (JMV) |
| | *(CLOSED)* |
| **CONNECTICUT GENERAL LIFE INSURANCE COMPANY, PHIL MANN and JOHN DOES 1-100,** | |
| Defendants. | **OPINION** |

**FALK, U.S.M.J.**

Before the Court are Plaintiffs' motion for contempt and Defendants and Counterclaimants' cross-motion seeking fees, both relating to Orders entered in the closed cases captioned above. These cases, which were often acrimonious, were settled and have been closed for more than a year. The contempt issue relates to events occurring in a state court lawsuit pending in the New Jersey Superior Court in Hudson County.

**The Federal Cases**

The first case, *Connecticut General Life Ins. Co. ("CIGNA") v. Roseland Ambulatory Surgery Ctr.*, 12-5941, involved CIGNA's allegation that Roseland engaged in fraudulent and/or deceptive billing practices by submitting claims for payment while failing to collect co-insurance from its patients in violation of the terms of the applicable employee benefit plans (this case is referred to by the parties as "the Recoupment Action").

The second case, *Lipsky, et al. v. CIGNA*, 13-105, involved claims of defamation and trade libel against CIGNA and its corporate spokesperson, Phil Mann, arising out of statements made by Mr. Mann in response to inquiries from the press regarding the Recoupment Action.

As the parties are aware, the cases were litigated for years, and the proceedings were often sprawling and difficult. So much so that then Chief Judge Simandle wrote to the parties, four years into the case, that "[m]y review of the docket sheet confirms that

there has been an air of contentiousness exhibited from time to time in these cases that no longer has a place in federal litigation.  If you want your disputes resolved as quickly and fairly as possible, you are to take responsibility to get to the heart of the matter and seek judicial intervention only where your good faith efforts to resolve your procedural and discovery disputes have been exhausted." [ECF No. 139.]  Ultimately, following a lengthy settlement conference in court (with Special Master Joseph P. LaSala, Esq. and the Undersigned), the cases settled.  A consent order of dismissal was filed on February 7, 2017.

On December 1, 2017, CIGNA filed the present motion seeking to enforce litigants' rights arising out of events occurring in state court.  CIGNA requests an order: (i) holding certain counsel[1] in contempt for violation of prior Orders and their representations regarding the treatment of confidential information; (ii) compelling counsel to destroy all documents in their possession that copy, quote, paraphrase or summarize such information; and (iii) awarding liquidated damages under the parties' Settlement Agreement and attorney's fees under 28 U.S.C. § 1927.  [ECF No. 182.] MHA LLC and Dr. Richard Lipsky (the "MHA parties") oppose the motion and have filed a cross-motion for (i) costs, expenses and attorney's fees; and to (ii) vacate existing discovery confidentiality orders.  [ECF No. 183.]  For the reasons set forth below, CIGNA's motion is **DENIED**.  The MHA parties' cross-motion is also **DENIED**.

---

[1] Anthony K. Modafferi III, Esq.; Robert Agresta, Esq.; and Vito A. Gagliardi, Esq. (the "Respondent Attorneys").

# BACKGROUND

The background of these cases spans years and is convoluted. This section is limited to the information necessary to decide the pending motions.

These motions involve CIGNA's claim that the MHA parties have violated three Court Orders entered at various times in the proceedings.

<u>First</u>, on December 16, 2014, Amended Consent Discovery Confidentiality Orders ("DCO") were negotiated between the parties and entered by the Court. These Orders governed the exchange of discovery in the cases; what use could be made of material designated with any one of multiple levels of "confidentiality" protection; and what should happen to "confidential" material at the conclusion of the cases. The DCOs state, in part:

> 4. All material designated [Confidential] shall be used by the receiving party solely for purposes of the prosecution or defense of this action, shall not be used by the receiving party for any business, commercial, competitive, personal or other purpose, and shall not be disclosed by the receiving party to anyone other than those individuals set forth in Paragraphs 5 and 6 unless and until the restrictions are removed either by written agreement of counsel for the parties or by order of the Court.
>
> . . .
>
> 21. Upon final conclusion of this litigation, including any appeals, each party or other individual subject to the terms hereof shall be under an obligation to assemble and return to the originating source all originals and unmarked copies of documents and things containing Confidential Health Information, Confidential, or Attorneys' Eyes Only information and to destroy,

>               should such source so request, all copies of such
>               materials that contain and/or constitute attorney work
>               product as well as excerpts, summaries and digests
>               revealing such Confidential Health Information.
>               Confidential, or Attorney's Eyes Only material;
>               provided, however, that counsel may retain complete
>               copies of all transcripts and pleadings including any
>               exhibits attached thereto for archival purposes . . .

(DCO ¶¶ 4, 21; Civ. A. No. 12-5941, ECF No. 82; Civ. A. No. 13-105, ECF No. 68.)

<u>Second</u>, an Order was entered on June 14, 2016, relating to the use of confidential information. For context, this Order was entered following *four* formal hearings (May 11, May 20, May 25, and June 14, 2016) relating to a motion by the MHA's parties (and others) to file an amended complaint. Ultimately, the motion to amend was granted in part and denied in part. The aspect of the motion to amend that was denied involved bringing entirely new claims into a then-four year old case. The denial was without prejudice to MHA filing a new case, with a new Complaint, in state or federal court. Underlying the repetitive and often amorphous proceedings was CIGNA's concern over the MHA parties using confidential information from this case in preparation of a new complaint, especially if it were to be filed in New Jersey state court. CIGNA claimed this was an issue because, in connection with the motion to amend, the MHA parties had submitted a proposed pleading that contained extensive and excessive quotation of, and citation to, allegedly confidential documents produced in discovery.

Accordingly, on June 14, 2016, the Court addressed the use of confidential information in the connection with the preparation of pleadings. Following a lengthy formal hearing, the Court issued an admittedly complex Order that sought to balance the

5

fact that the proposed pleading submitted with the motion to amend was based on information designated confidential and learned during the course of the proceedings, with the unfairness that could result if the MHA parties were required to start a new case without the information. This was difficult because, had the motion to amend been granted, there would have been no restriction on using the discovery information produced in the case to prepare the amended complaint. The Court's Order stated, in part, as follows:

> 1. The Roseland parties are permitted to use and rely on discovery from this case in the preparation of a new complaint. 'Use and rely on' means that the Roseland parties are not expected to scrub from their memories information learned during the course of these cases, and may draw on the materials produced and knowledge learned during the pendency of these cases, through discovery or otherwise, mentally or in writing, in preparation of a new complaint. However, this Order does not authorize or permit the Roseland parties to specifically cite, quote, or paraphrase any material, designated as confidential, that has been produced in discovery in this case.
>
> 2. If the Roseland parties intend to directly quote or cite any CIGNA materials designated with any level of confidentiality in their new complaint, as they did in the proposed pleadings submitted in connection with the motions to amend, this Order does not authorize it. Instead, the Roseland Parties would need to seek relief from the Court, in the form of a dispute under the Discovery Confidentiality Order ("DCO"), and identify the <u>specific</u> <u>material</u> intended to be cited or quoted and how that material is not confidential and/or that the public interest in such material outweighs confidentiality. This would amount to a discovery dispute that implicates the meet-and-confer obligations contained in Local Civil Rule 37.1, including manner

>> of presentation to the Court. Such disputes will be referred to the Special Master. (Nothing in the description of this potential dispute/ application alters the burdens the parties have relating to establishing confidentiality of information under the DCO, Federal and Local Rules, and applicable Third Circuit case law.)
>
> 3. Nothing in this Order—or the Court's comments on the record on this date—should be construed to suggest that discovery in this case will be admissible in any other case that may be filed. What discovery will be permitted in any other case is left to whichever Judge may be presiding over such a case. If the Roseland parties intend to submit discovery served in this case as an exhibit or as a portion of the record in any new case, nothing in this Order authorizes it, and counsel should proceed however they ordinarily would in such circumstances—whether that be an application by the Roseland Parties for a modification of the DCO similar to that referenced in paragraph 2 above, or a motion by CIGNA to enforce the DCO.

(June 14, 2016 Order ¶¶ 1-3; No. 13-105, ECF No. 162.)[2]

Third, the Consent Order of Dismissal filed on February 7, 2017, states in part:

> 3. The parties, counsel for all parties, and each individual subject to the obligations of the terms of the [DCO] entered in this case . . . shall comply in all respects with the terms of paragraph 21 of the DCO and destroy or return the originals and all copies of documents designated Confidential Health Information, Confidential or Attorney's Eyes Only under the terms of the DCO within 14 days of the date of this Consent Order.

---

[2] After the motion to amend was denied, on September 16, 2016, the MHA parties filed a separate state court action captioned *Meadowlands Hospital v. The New Jersey Association of Health Plans, Inc.*, *et al.*, Docket No. HUD-L-3723-16 (N.J. Super.) The parties refer to this case, which is still pending, as the "Hudson County Action"

(No. 12-5941, ECF No. 216; No. 13-105, ECF No. 174.)[3]

**Current Motion**

CIGNA claims the MHA parties and Respondent Counsel are "flagrantly violating" the Orders above by using confidential discovery material from this case in the Hudson County Action. It contends that the MHA parties and the Respondent Attorneys have engaged in "two discrete acts of defiance" of the Orders quoted above. (Pl.'s Reply Br. 1.) The first is the allegation that the MHA parties have used confidential information in the preparation of the Hudson County complaint. The second is the claim that, in the Hudson County Action, Mr. Gagliardi submitted a certification from Mr. Modafferi in opposition to a motion to quash a subpoena, and that the certification contains "a table that paraphrases and quotes extensively from material designated confidential in the above-captioned cases." Due to these alleged violations, CIGNA requests an Order adjudging the Respondent Attorneys in contempt; seeks certifications from the Respondent Attorneys that all confidential materials of any type have been destroyed; seeks a certification that any work-product supporting Mr. Modafferi's certification has been destroyed; and requests fees and costs pursuant to the settlement agreement and 28 U.S.C. § 1927.

The MHA parties oppose the motion on a number of grounds. First, they contend that the Court's Order allowed them to "use and rely" on confidential information in

---

[3] In addition, Paragraph 4 of the Consent Order of Dismissal provides that "the Court will retain jurisdiction over any disputes arising out of the Settlement Agreement or with respect to the enforcement of the Discovery Confidentiality Order." (*Id.*)

8

preparing the Hudson County complaint; therefore, there is no basis for a finding of contempt. In support of this position, the MHA parties refer to extensive colloquy from the three hearings in May 2016, and the hearing on June 14, 2016. (*See* Defs.' Br. 6-15.)

Second, the MHA parties contend that CIGNA knew about the confidential material used in preparation of the Hudson County complaint since September 2016 when it was filed, and did nothing about it for more than a year, thereby waiving any objection to the use of confidential information.

Third, the MHA parties contend that Mr. Modafferi's certification was based on attorney-work product created during the pendency of the two federal cases. According to the MHA parties, this work-product was not previously destroyed because Mr. Modafferi was under no obligation to destroy such information absent an express request, which they claim was never made.

Fourth, the MHA parties contend that a finding of contempt requires a "clear and convincing" showing that an order has be violated, and that, if any violation occurred here, it was not clear and convincing because the orders were ambiguous.

Finally, the MHA parties seek to dissolve the DCOs entered in these cases, arguing that they are more likely to cause additional future problems, and that CIGNA's own counsel has stated that the two federal cases were a matter of public interest,[4] and that there should not be any confidentiality associated with these proceedings.

---

[4] Defendants' refer to statements in a letter Plaintiffs' counsel wrote to Chief Judge Simandle on February 26, 2016, that stated in part, "[t]hese cases involve issues of true public interest – from our client's perspective, the application of key and widely-employed terms of health plans and the control of medical costs." [ECF No. 137 at 2.]

# **LEGAL STANDARD**

A motion in aid of litigants' rights is a means to compel compliance with a judicial order or to enforce the terms of a settlement agreement. *See In re New Jersey State Board of Dentistry*, 84 N.J. 582, 586 n.1 (1980). To hold a party in civil contempt, the proponent must show by "clear and convincing" evidence that: (1) a valid order of the court existed; (2) the opposing party had knowledge of the order; and (3) the opposing party disobeyed the order. *See FTC v. Lane Labs-USA, Inc.*, 624 F.3d 575, 582 (3d Cir. 2010).

The burden in a civil contempt proceeding is on the petitioning party. *See Lawn Doctor v. Rizzo*, 646 Fed. Appx. 195, 197 (3d Cir. 2016). "Clear and convincing evidence" is a stringent standard that requires evidence "so clear, direct and weighty and convincing as to enable the fact-finder to come to a clear conviction without hesitancy, of the truth of the precise facts in issue." *N.J. Sports Prods. v. Don King Prods.*, 15 F. Supp. 2d 546, 551 (D.N.J. 1988); *see also Quinter v. Volkswagen of Am.*, 676 F.2d 969, 974 (3d Cir. 1982) ("The plaintiff has a heavy burden to show a defendant guilty of civil contempt. It must be done by 'clear and convincing evidence' and where there is ground to doubt the wrongfulness of the conduct of the defendant, he should not be adjudged in contempt.").

Good faith is not a sufficient defense to an allegation of civil contempt, as "an alleged contemnor's behavior does not have to be willful for a court to reach a finding of civil contempt." *Robin Woods Inc. v. Woods*, 28 F.3d 396, 399 (3d Cir. 1994). However,

"civil contempt is a severe remedy, and should not be resorted to where there is a fair ground of doubt." *Nelson Tool & Machine Co., Inc. v. Wonderland Originals, Ltd.*, 491 F. Supp. 268, 269 (E.D. Pa. 1980). "[S]pecificity" in terms of the order is a "predicate to a finding of contempt," because "'a person will not be held in contempt unless the order has given him fair warning.'" *Harris v. City of Phil.*, 47 F.3d 1342, 1349 (3d Cir. 1995) (quoting *United States v. Christie Indus., Inc.*, 465 F.2d 1002, 1006 (3d Cir. 1972)). Therefore, contemnors "are sometimes excused when they violate vague court orders: there is a long standing salutary rule in contempt cases that ambiguities and omissions in orders redound to the benefit of the person charged with the contempt." *Robin Woods Inc.*, 28 F.3d at 399 (citing *Eavenson, Auchmuty & Greenwald v. Holtzman*, 775 F.2d 535, 544 (3d Cir. 1985)). In sum, a "contempt citation should not be granted if there is ground to doubt the wrongfulness of the defendant's conduct." *Harris*, 47 F.3d at 1349 (citations omitted).

## DECISION

Movants' request for a finding of contempt is denied because it has not met the applicable, stringent, clear and convincing standard. This is largely because the relied upon Orders were not entirely clear, and were in some instances somewhat ambiguous and vague.[5] Upon reflection, this is so because of the following reasons.

---

[5] For example, the Court's June 14, 2016 Order states, in part, that "[i]f the Roseland parties intend to submit discovery served in this case as an exhibit or as a portion of the record in any new case, nothing in this Order authorizes it." (June 14, 2016 Order ¶ 3; No. 13-105, ECF No. 162.) However, that arguably conflicts with comments made on the record, such as: "It was always my feeling and it is my feeling that if Roseland, Lipsky is asking for permission to use discovery obtained in this case and these cases for purposes of preparing

First, the Court was dealing with the issue of confidentiality in litigation and public access to the courts, which has long been recognized to be a complex and controversial subject. *See, e.g.*, Arthur R. Miller, *Confidentiality & Protective Orders and Public Access to the Courts*, 105 Harv. L. Rev. 427 (1991). In hindsight, complete precision was ideal, but not realistic based on the speculative arguments presented to the Court. The Orders were entered in abnormally contentious old cases that were not moving toward a decision on the merits despite substantial court involvement and the devotion of significant Court resources -- ultimately requiring the appointment of an experienced and superlative Special Master. The Court believed it important to focus on the merits rather than being endlessly stuck on trying to achieve absolute precision regarding something that might or might not occur in the future.

Second, the Court's decision to deny amendment in the four-year-old case was partly a case management decision made to further the interests of justice; to try to adhere to the goal of providing the prompt and efficient dispensation of justice to the litigants.

---

the pleadings requested to be brought in this case, which I denied, . . . I think that would be perfectly appropriate . . . ." (Transcript of Hearing, dated May 20, 2016, at 5:20-6:13); *see also* Transcript of Hearing, dated June 14, 2016, at 9:10-16 ("I was preserving the right to file a new case. But if Roseland was not allowed to use the discovery in this case for purposes of preparing pleadings in the new case it would have been in a worse spot pleading wise and it would have had – had the amendment been allowed, and that certainly was never my intention.").

Although it apparently did not work, the idea was to try and balance the relevant interests and allow the Roseland and MHA parties to *use* discovery in this case in the sense that they could mentally draw on the material to prepare their pleadings, but not submit, cite, quote, and affirmatively put such information before another court in connection with another pleading.

However, doing so required the Court to protect the rights of the MHA parties to bring their claims in a separate case without being restricted by the entire controversy doctrine or by an overly restrictive protective order. Once again, had the amendment been permitted, the protective order relied upon now would not restrict the pleading in this case in the same way. (That is not to say the MHA parties' proposed, detail-heavy pleading would have been found to be entirely appropriate or not be partially stricken.) Thus, the Court attempted to "thread the needle" between the Movants' rights to confidentiality and the MHA parties' rights to plead their case. This made the Court's Orders necessarily subject to interpretation. This is especially so in light of Movants' request for strict confidentiality and its adversary's penchant for what may be described as extremely factual pleading. The idea was to allow MHA the basic use of (but not specific reference to) confidential discovery as a means to plead its case. If a new case was brought, the Judge presiding over any new case would then make the specific decisions as to what is discoverable, what belongs in a particular pleading, etc.

Under these circumstances and after revisiting the language of the relevant Orders, the Court cannot find the MHA parties in contempt, especially since Movant must meet a universally agreed upon, stringent, clear and convincing standard. The denial of a contempt finding is no endorsement of MHA's counsel's conduct. Indeed, delving into the specifics, the Court suspects there were violations of at least the spirit (and in perhaps some cases the letter) of the protective orders. However, justice demands that this issue be put to rest at the moment, with the future guided by the following:

1. All requests to hold counsel in contempt are **DENIED**, for the reasons set forth above;

2. Any remaining "work product" subject to the Order should be immediately destroyed in light of the now express request by Movants;

3. MHA's request to dissolve the protective order is **DENIED**. Much time was spent on the issue and the parties relied on same. Although, this could lead to some further confusion, that is not a basis to dissolve the Orders. In the future, the parties should bring flagrant violations of the Orders to this Court – only after meeting-and-conferring and attempting to resolve any confidentiality dispute with the Judge in charge of the case where the dispute arises (if it arises in a case). And as stated, whether something is discoverable in any other case – regardless of whether it is or is not confidential – is an issue for the Judge handing such a case. Although the Federal Courts retention of jurisdiction to enforce the Orders remains extant, it will only be exercised as a last resort in the face of an unambiguous violation.

**SO ORDERED.**

                                          s/Mark Falk
                                          **MARK FALK**
                                          **United States Magistrate Judge**

**DATED: April 3, 2018**